UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:12-cr-156 (CKK) |
| v. : | |
| : | |
| EUGENIA C. HARRIS, : | |
| : | |
| Defendant. : | |
| _____: | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING
AND MOTION FOR DOWNWARD DEPARTURE**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. On July 10, 2012, defendant Eugenia C. Harris (the "defendant" or "Harris") pleaded guilty to a three-count Information charging her with

- one count of Conspiracy to (a) Make a Contribution in the Name of Another, in violation of 18 U.S.C. § 371, 2 U.S.C. §§ 441f, 437g(d)(1)(D), and (b) to Destroy, Alter, or Falsify Records in Federal Investigations (also called Obstruction of Justice), in violation of 18 U.S.C. §§ 371, 1519 (Count One);

- one count of Fraud and False Statements (also called Filing a False Tax Return), in violation of 26 U.S.C. § 7206(1) (Count Two); and

- one count of Conspiracy to Make a Contribution in the Name of Another Person, in violation of D.C. Code §§ 22-1805a, 1-1131.01(e) (Count Three).

These charged offenses, and the defendant's relevant conduct, all pertain to her participation in a scheme with Jeffrey E. Thompson ("Thompson") and others in which, using Thompson's funds, Harris and others made conduit contributions to various federal and District of Columbia political candidates and implemented "shadow campaigns" of unreported contributions and expenditures in support of District of Columbia candidates and one federal candidate for U.S. President. In

1

addition, the defendant admitted participating in a conspiracy to obstruct the federal investigation of these offenses by, in part, filing a tax return which falsely characterized certain funds Harris received from Thompson in an effort to conceal and shift culpability from Thompson (and others) to Harris – essentially setting Harris up to "take the fall" for the 2010 mayoral shadow campaign while Thompson paid for Harris to leave the country.  Harris also admitted that, in August 2011, she filed a false tax return for one of her companies that falsely declared as business expense deductions funds her company, in fact, spent on political campaigns/contributions.  In short, Harris participated in a years-long scheme to corrupt the District's elections and various federal elections – and covered it up.

The defendant's offenses were serious.  Under the terms of her 2012 plea agreement, the parties agreed that – prior to any credit for cooperation – the defendant's advisory sentencing guidelines range under the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") was at an aggregate offense level of 19 resulting in a range of 30 to 37 months of incarceration.  (As noted below, recent revisions in the Guidelines have lowered the applicable level and ranges.)

But after her initial obstruction, the defendant did cooperate – and was the earliest of the primary shadow campaign/conduit contributor conspirators to come forward, accept responsibility, and admit to investigators not just her own crimes, but also describe the role of others in them.  Harris's plea and cooperation helped significantly advance the investigation and prompted numerous guilty pleas that followed – by Vernon Hawkins in 2013, by Troy White in 2013, by Thompson in 2014, by three unsuccessful D.C. Council candidates (Kelvin Robinson, Jeff Smith, and Mark Long) later in 2014, as well as the revised plea and sentencing of former At-Large Council Member Michael Brown in 2014.

Unfortunately, this is not the defendant's first involvement in public corruption and the criminal justice system. In 1988, the defendant was convicted of an earlier corruption-related offense, Misprison of a Felony, which was not unlike the scheme Harris participated in as Thompson's go-to organizer of various District of Columbia shadow campaigns. As described in the proffer in that earlier case, Harris was essentially involved in a scheme to submit false invoices to the District government, which would provide funds to pay a purported "consultant" who in fact did no work under Harris's company's contract with the District government.

In light of the defendant's cooperation, compliance with her plea agreement, and criminal history, the government recommends a sentence of three years of probation with six months of home confinement imposed at the beginning of that period.

## FACTS

As set forth in her statement of offense ("SOO"), and found in the Pre-Sentence Investigation Report ("PSR"), the defendant was Thompson's long-time friend and business associate, controlling two for-profit companies registered in the District of Columbia: Belle International, Inc. (Belle); and Details International, Inc. (Details). PSR ¶¶ 23-24. Harris engaged in two primary types of campaign finance fraud with Thompson and others. First, beginning as early as 2001 and continuing until at least in or about December 2010, Harris, Thompson, and others knowingly and willfully conspired and agreed together and with each other to make contributions in violation of the prohibition against disguised contributions made through conduits in various District of Columbia and federal elections. PSR ¶ 29. Second, in 2010, Harris conspired with Thompson and others to use over $653,000 of Thompson's funds to implement a shadow campaign Get Out the Vote ("GOTV") effort to support a mayoral candidate

3

in the District of Columbia.  (And, as described below in discussing Harris's cooperation, Harris admitted to investigators her participation in shadow campaigns for other campaigns as well.)

Harris also obstructed the investigation – and filed a false tax return.  That is, in 2011, when the mayoral shadow campaign was being investigated, Harris conspired to, and did, obstruct the investigation of it by, among other things, creating false documentation and filing a false tax return purporting to characterize the shadow campaign payments from Thompson as a legitimate business arrangement whose proceeds Harris had diverted, essentially so that Harris would take responsibility for the illegal shadow campaign.  At about the same time, in 2011 and 2012, Thompson and Harris planned for Harris to leave the country so that she would be unavailable to investigators.

Earlier, in August 2011, as part of the charged tax offense, Harris filed false 2010 federal and District corporate tax returns for Belle, deducting non-deductible expenses of the shadow campaign from Belle's reported income, and causing a tax loss of $402,366.

**Federal and District of Columbia Conduit Contributions.**  Harris was an integral part of Thompson's illegal conduit contribution scheme.  Specifically, Harris and Thompson arranged to make illegal conduit campaign contributions in different ways.  PSR ¶ 30.  In connection with Thompson's political fundraisers, Thompson arranged to reimburse Harris (and others Harris identified and solicited) for campaign contributions.  *Id*.  That is, Thompson directed Harris to write checks to federal and District of Columbia campaigns – and Thompson directed Harris to obtain contribution checks from others, including friends, members of Harris's family, and employees of Details.  *Id*.  Thompson promised to, and did, reimburse Harris for Harris's own contributions as well as those that Harris obtained from others.  *Id*.  Harris then carried out

Thompson's directions, writing her own contribution checks and requesting that friends, family members, and employees of Details write contribution checks to Thompson-selected federal and District of Columbia campaigns with the promise of repayment. PSR ¶ 31. Finally, to conceal these illegal contributions and account for them on the books of Thompson's businesses, Thompson directed Harris to submit false invoices for the reimbursements, including some with false information (such as purported "community outreach" services). PSR ¶ 32. Thompson's businesses then reimbursed Harris, who likewise reimbursed others who made contributions at her request. *Id*. Examples of the nature these offenses include the following:

- In 2008, Harris contributed $14,650 to various federal political campaigns at Thompson's direction and was then reimbursed by Thompson. PSR ¶ 33. In addition, Harris, at Thompson's direction, obtained contributions from three others (at $2,300 per person, the maximum lawful amount at the time), an aggregate of $6,900. *Id*. Thompson reimbursed Harris for the total $21,550 in federal campaign contributions, and Harris reimbursed the three additional sub-conduits. *Id*.

- In 2010, Harris and her companies (Belle and Details) each contributed $2,000 to a District of Columbia mayoral candidate. PSR ¶ 34. Harris, at Thompson's direction, also obtained contributions to the candidate of $2,000 per person – the maximum lawful amount at the time – from sixteen family members, employees, and friends (for an aggregate $38,000). *Id*. Thompson reimbursed Harris for the campaign contributions; Harris reimbursed the sixteen sub-conduits. *Id*.

**2010 District of Columbia Mayoral Shadow Campaign.** In 2010, Harris and Thompson, with others, agreed to buy campaign materials and pay staff in support of a District of Columbia mayoral candidate's campaign, knowing that neither the campaign nor Thompson and Harris would report these expenditures to the D.C. Board of Elections and Ethic's Office of Campaign Finance ("OCF"). PSR ¶ 35. Details of the conspiracy are recited in Harris's (and Thompson's) statements of offense. To summarize, Thompson agreed with Harris (and others) that he would fund an off-the-books GOTV effort. PSR ¶ 36. To pay for the effort, Thompson

5

sent five payments, totaling $653,800, from one of his companies to Harris's company, Belle – the vast majority between September 7 and 14, 2010.  PSR ¶ 37.  Harris, working with others, caused this money to be spent on services and materials for the shadow campaign.  PSR ¶ 38.  As agreed, none of these expenditures (which were also campaign contributions) were reported to OCF (and thus made public), as required under District of Columbia law.  PSR ¶ 38.

Using Thompson's funds, Harris executed the shadow campaign by (a) purchasing campaign materials (such as banners, signs, posters, handouts, t-shirts, and stickers) which often bore logos, graphics, and designs identical to the official campaign and which were delivered to the official campaign offices; (b) hiring and paying consultants and canvassers and drivers working for them to execute the GOTV effort in support of the official candidate; and (c) purchasing and renting support materials for the GOTV effort, such as radios, sound, catering, and parking, as well as rental vans and hotels.  PSR ¶¶ 39-43.  The statement of offense detailed about $127,699.66 in shadow campaign materials, $203,084.33 in shadow campaign payroll, and at least $57,992 in shadow campaign support, among other funds.  PSR ¶¶ 39, 41, 42-43.

**Obstruction of Justice.**   Then, between June and December 2011, Harris and Thompson conspired to obstruct the federal investigation of this mayoral shadow campaign.  PSR ¶ 45.  For example, in December 2011, aware of the federal investigation, at Thompson's request, Harris agreed to file false amended federal and D.C. tax returns for Belle for the year 2010 to conceal Thompson's involvement in the shadow campaign offense.  PSR ¶¶ 46-47.  The obstruction involved Thompson creating (and Harris assenting to) various documents, including the amended tax returns, that would purport to corroborate a false cover story that the hundreds of thousands of dollars that Thompson's business had paid to Belle in 2010 were part of a legitimate business

6

arrangement, thereby concealing Thompson's role in the shadow campaign.  PSR ¶ 49.

One such document was a false back-dated letter agreement between Belle and DCHSI purporting to describe $566,000 paid to Belle as advances for purported marketing/business development services, when in fact the funds were for the 2010 mayoral shadow campaign.  PSR ¶ 48.  The letter also falsely stated that DCHSI owed Belle a balance of $161,569, due on December 31, 2011, for work performed.  PSR ¶ 48.  Harris knew that Belle was not owed this money, but those funds were a portion of what Thompson agreed to reimburse her for amending her tax returns, which would result in tax liability.  PSR ¶ 48.

On Thompson's instructions, on December 17 and 18, 2011, Harris caused to be filed amended 2010 D.C. and federal tax returns for Belle; both returns reported as income to Belle Thompson's shadow campaign payments but did not deduct any of the campaign-related expenditures on the amended returns, thereby reporting that Belle owed federal income taxes of $311,096, and District of Columbia income taxes of $91,270.  PSR ¶ 49.  Then, as agreed, on December 31, 2011, DCHSI issued a check to Belle for $161,569, and Harris then used that money in partial satisfaction of the owed federal and District taxes.  PSR ¶ 50.

In addition, Harris engaged in other obstructive conduct.  In the summer of 2011, aware of the federal investigation into the shadow campaign, Harris directed others to destroy a large volume of paper and electronic records that could have revealed the involvement of Harris and Thompson in the shadow campaign.  PSR ¶ 52.  Relatedly, in August 2011 and again in February 2012, Thompson instructed Harris to leave the country at Thompson's expense so that Harris would be unavailable to investigators.  Though at first reluctant, Harris ultimately agreed to travel, but the plan was cancelled after the FBI's March 2012 search of Thompson's and Harris's

offices and homes.   PSR ¶ 53.

**Filing a False Tax Return.**   The charged tax offense occurred in August 2011, when Harris willfully filed a false U.S. Corporation Income Tax Return for Belle for the calendar year 2010; it improperly deducted from Belle's income $908,467 in political expenditures (shadow campaign spending and conduit contribution reimbursements), which were not legally deductible. Thus, Belle's income was substantially under-reported as was the amount of tax due and owing. PSR ¶¶ 54-55.   Harris did the same on Belle's District corporate tax return.   PSR ¶ 58.   The federal tax loss was $311,096 and the District tax loss was $91,270 – for a total tax loss of $402,366.   PSR ¶ 58.

## MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K1.1

In her debriefings and her SOO, Harris substantially assisted the investigation and the prosecution of others, in particular advancing the investigation of Thompson's conduit-contribution conspiracy and participants in various shadow campaigns funded by Thompson, often where the money was channeled through Harris.  Specifically, she provided substantial assistance in the investigation and prosecution of the following individuals: Thompson; Vernon Hawkins ("Hawkins"); Michael Brown; Mark Long; Kelvin Robinson; Jeffrey Smith; and Troy White.   She also provided substantial assistance in the investigation of others in the 2010 mayoral shadow campaign.   Indeed, beginning in March 2012 (about two weeks after the FBI's search of Thompson's and Harris's offices and homes) and prior to entering her guilty plea, Harris debriefed extensively with investigators and prosecutors, providing voluminous information through at least nine debriefing sessions.   As part of her

guilty plea, Harris agreed to continue her cooperation in the investigation of others. Harris provided substantial assistance in the following areas:

- Harris provided substantial assistance against Thompson in connection with an illegal conduit campaign contribution scheme in which Thompson directed Harris to recruit family members, friends, and employees to make campaign contributions – secretly reimbursed – to federal and District of Columbia candidates. Thompson pleaded guilty to conspiracy to commit campaign finance violations and tax evasion. *See United States v. Jeffrey E. Thompson*, 14-cr-49 (CKK). Thompson was sentenced to three months of incarceration.[1]

- Harris provided substantial assistance against Thompson and Hawkins in connection with the 2010 mayoral shadow campaign. Harris admitted that she conspired with Thompson and Hawkins to manage that shadow campaign. Hawkins pleaded guilty to making a false statement. *See United States v. Vernon Hawkins*, 13-cr-227 (CKK). Hawkins was sentenced to six months of incarceration. Thompson likewise admitted his involvement, pleading (as noted above) to conspiracy to commit campaign finance violations.

- Harris also implicated Thompson and Hawkins in obstruction of justice related to the 2010 mayoral election. Specifically, as noted above, Harris provided statements that Thompson directed Harris to prepare a false tax return, sign a false contract and make false statements to investigators concerning the nature and source of the funding for the shadow campaign, and flee the country in an effort to obstruct the investigation into the 2010 mayoral election. Further, Harris provided statements that Thompson and Hawkins arranged for other shadow campaign employees/organizers to leave the country in an effort to obstruct the investigation into the 2010 mayoral election.

- Harris also provided substantial assistance in the investigation and prosecution of Thompson and others in connection with various other illegal shadow campaigns, that is, those during the 2006 primary election for Mayor, the 2007 special election for D.C. Council (Michael Brown), the 2008 primary election for D.C. Council (Mark

---

[1] Arguably, Harris's plea and debriefing about Thompson's conduit contributions provided substantial assistance as to unrelated participants in the conduit contribution conspiracy, such as employees and officers of Thompson's company. Two such participants – Lee Calhoun and Stanley Straughter – pleaded guilty in 2013, following Harris's guilty plea. *See United States v. Lee Calhoun*, 13-cr-173 (CKK); *United States v. Stanley Straughter*, 13-cr-181 (CKK). Harris did not (and could not) directly implicate either of these fellow "spokes" in Thompson's hub-and-spoke conduit contribution conspiracy. Nonetheless, because her cooperation is arguably relevant to their pleas (if by nothing other than publicly reporting of her plea further exposing Thompson's scheme), they are noted for the Court's consideration.

9

Long and Michael Brown), and the 2010 primary election for D.C. Council (Kelvin Robinson and Jeff Smith).

- More specifically, Harris provided substantial assistance in the investigation and prosecution of Mark Long. Harris provided statements and documents implicating Long as a knowing participant in the illegal shadow campaign for the mayoral campaign in 2010 and demonstrating that Thompson paid for Long's services as a driver for that campaign. Harris also implicated Mark Long in illegal campaign contribution/expenditure payments (that is, a shadow campaign) for Long's own campaign for D.C. Councilmember in 2008. That is, Harris explained how she paid for payroll, rent, and campaign materials for Long's campaign. In late 2014, Long pleaded guilty to conspiring to violate campaign finance laws in connection with the 2010 primary election for Mayor.[2]

- Harris provided substantial assistance in the investigation and prosecution of former D.C. Councilmember Michael Brown in connection with illegal campaign finance payments during Brown's unsuccessful campaign for Mayor in 2006 (including a payment to drop out and endorse another candidate), Brown's unsuccessful campaign for D.C. Councilmember in 2007, and Brown's successful campaign for D.C. Councilmember in 2008. Brown pleaded guilty to an unrelated bribery charge, but he received an enhanced sentence because of his campaign finance violations.[3]

- Harris provided substantial assistance in the investigation and prosecution of Kelvin Robinson in connection with illegal campaign contribution/expenditure payments (that is, a shadow campaign) during Robinson's unsuccessful campaign for D.C. Councilmember (At-Large and subsequently Ward 6) in 2010. Robinson pleaded guilty to conspiring to commit campaign finance violations.[4]

- Harris provided substantial assistance in the investigation and prosecution of Jeff Smith in connection with illegal campaign contribution/expenditure payments (that is,

---

[2] *See United States v. Mark Long*, 2014-CF2-15615 (D.C. Superior Court). Long was sentenced to probation.

[3] As part of his unrelated conviction for bribery, former D.C. Councilmember Brown admitted accepting illegal campaign contributions from Thompson during Brown's successful 2008 election for At-Large Member of the D.C. Council, his unsuccessful campaign for the 2007 special election for Ward 4 Member of the D.C. Council, and his unsuccessful mayoral campaign in 2006. *See United States v. Michael A. Brown*, 13-cr-164 (BAH). Brown was sentenced to 39 months of incarceration.

[4] Kelvin Robinson pleaded guilty to accepting illegal campaign contributions from Thompson during his unsuccessful 2010 campaign. *See United States v. Kelvin Robinson*, Case No. 2014-CF2-8873 (D.C. Superior Court). Robinson was sentenced to probation.

10

a shadow campaign) during Smith's unsuccessful campaign for D.C. Councilmember (Ward 1) in 2010, although Harris was not directly involved in executing that shadow campaign.   Smith pleaded guilty to filing illegal campaign finance reports.[5]

- Finally, to a more limited extent, Harris provided assistance in the investigation and prosecution of Thompson and Troy White in connection with an illegal shadow campaign related to a 2008 candidate in the primary election for U.S. President, described in greater detail in Thompson's statement of offense.[6]   Harris participated in this conspiracy in a more limited way than in the shadow campaigns for District of Columbia offices; Harris served simply as a pass-through for Thompson's money going to the consultants (primarily White) who executed the shadow campaign.[7]

In providing this ample information, and the information set forth in the sealed addendum filed herewith, Harris substantially assisted the investigation and prosecution of Thompson and others.   As noted, numerous such individuals pleaded guilty: Thompson, Hawkins, and Troy White pleaded guilty before this Court; Mark Long, Kelvin Robinson, and Jeffrey Smith pleaded guilty in D.C. Superior Court; and Michael Brown, having previously pled to a bribery offense, but having omitted his participation in these offenses, agreed to an enhanced sentencing range.

On that basis, the government respectfully moves that the Court grant the government's motion for downward departure and reduce Harris's offense level by 12 levels pursuant to U.S.S.G. § 5K1.1.[8]

---

[5] Jeff Smith pleaded guilty to accepting illegal campaign contributions from Thompson during his unsuccessful 2010 campaign.   *See United States v. Jeff Smith*, Case No. 2014-CF2-10925 (D.C. Superior Court).   Smith, who did not cooperate with the investigation, was sentenced to 60 days of incarceration.

[6] As set forth in the Thompson case, from in or about February 2008 through in or about May 2008, Thompson used his companies to funnel approximately $608,750 to pay for campaign services in support of a shadow campaign for a presidential candidate.   Thompson SOO ¶¶ 9-10, 77-103.

[7] *See United States v. Troy White*, 13-cr-256 (CKK).   White was sentenced to probation.

[8] For comparison, the government requested and the Court granted a 10-level downward departure

11

## U.S. SENTENCING GUIDELINES CALCULATION

The government concurs with the Guidelines calculation in the PSR, which results in an offense level 17. *See* PSR ¶¶ 74-101.[9] Thus, prior to any consideration of the downward departure, Harris's advisory guidelines range is 24 to 30 months. As noted above, the government contends a 12-level departure is warranted given the defendant's substantial assistance related to a number of offenses and defendants. Should the Court grant the requested downward departure, defendant's offense level would be 5 and her advisory guidelines range would be 0 to 6 months in Zone A. To be clear, this is the initial Guidelines calculation the government believes is appropriate for the federal counts of conviction, consistent with that set forth in the PSR:[10]

---

for the substantial assistance provided by related defendants Lee Calhoun and Stanley Straughter.

[9] In the 2012 plea agreement and statement of offense, the parties' agreed-upon Guidelines calculation reflected a total offense level of 19 based upon the version of the Guidelines then in effect. The Guidelines have since changed, affecting one of the enhancements relevant to Harris. That is, instead of a base offense level of 20 for the tax fraud/false return based on the tax loss amount (more than $400,000, as contemplated in the plea agreement under the then-current version of the Guidelines), the relevant 2015 Guidelines apply a base offense level of 18 for a tax loss more than $250,000, but less than $550,000. In other words, an intervening change in the Guidelines gives Harris a two-level reduction in her Guidelines calculation such that her total offense level is now 17.

[10] The third count, the D.C. Code Conspiracy to which Harris pled, does not factor into the guidelines calculation. It is not a federal charge, nor is it covered by the D.C. Voluntary Sentencing Guidelines, as the particular object of the conspiracy with which Harris was charged is a misdemeanor offense.

Case 1:12-cr-00156-CKK   Document 61   Filed 08/26/16   Page 13 of 20

### Count 1 – Prong (a): Conspiracy – Campaign Finance Laws

| | | |
|---|---|---|
| U.S.S.G. § 2C1.8(a) | Base Offense Level | 8 |
| U.S.S.G. § 2C1.8(b)(1) | Value of Transactions (More than $30,000) | 6 |
| | Sub-Total | 14 |

### Count 1 – Prong (b): Conspiracy – Obstruction of Justice

| | | |
|---|---|---|
| U.S.S.G. § 2J1.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2J1.2(b)(3)(B) | Especially Probative Document | 2 |
| | Sub-Total | 16 |

### Count 2: Tax Fraud and False Statements, 26 U.S.C. § 7206

| | | |
|---|---|---|
| U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(G) | Base Offense Level | 18 |
| | Sub-Total | 18 |

| | | |
|---|---|---|
| Grouping Adjustment | +2 levels to highest offense level | |
| Acceptance of Responsibility | -3 levels | |
| | Total | 17 |

## GOVERNMENT'S POSITION ON SENTENCING

As set forth above, the United States recommends a sentence of three years of probation with six months of home confinement imposed at the beginning of that period. Such a sentence is appropriate in light of all the factors to be considered at sentencing under 18 U.S.C. § 3553(a).

A. **The Nature and Circumstances of the Offense**

The nature and circumstances of the offense are set forth above.

B. **The History and Characteristics of the Defendant**

On the positive side, the PSR reflects that the defendant has been stably self-employed as a public relations consultant dating back to the 1980s.

However, the nature and characteristics of the offenses here also speak to defendant's history and character – in particular her willingness – for years – to participate in a scheme to corrupt the District's electoral process and its elected officials.

Moreover, in 1988, the defendant was convicted of an earlier corruption-related offense, Misprison of a Felony.  PSR ¶ 105.  As described in the proffer in that case, Harris was essentially involved in a scheme to submit false invoices to the District government, which would provide funds to pay a purported "consultant" who in fact did no work under Harris's company's contract with the District government.  Unfortunately, the corruption in this earlier conviction is not unlike that Harris displayed in her serial participation as Thompson's go-to organizer of various District of Columbia shadow campaigns from 2006 through 2010.

### C. The Need for the Sentence Imposed (A) To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and To Provide Just Punishment for the Offense; (B) To Afford Adequate Deterrence; and (C) To Protect the Public from Further Crimes of the Defendant.

Ordinarily, to adequately reflect the extremely serious nature of the defendant's offense, promote respect for the law, and justly punish such behavior, an appropriate sentence would include a period of incarceration.  Put simply, for years, Harris joined Thompson in executing the largest campaign finance scheme in the District's history of local elections.  Harris not just received and passed on Thompson's money, but took an active role in spending it, hiring and directing the staff who operated the shadow campaigns.  Her serial offenses strike at a key institution for democracy: transparent and fair elections for officials.   It is difficult to overstate the severity and significance of Harris's offense or the culture of corruption she perpetuated.

In addition, the Court's sentence must provide adequate general deterrence.  Campaign finance crimes, because they are committed in secret and hidden from the victims, are difficult to

14

identify and prosecute. Nonetheless, they have tremendous social cost – eroding faith in elections and elected officials, if not resulting in other forms of political corruption. Deterring them therefore requires appropriate punishment when offenders are caught. Sentences of incarceration send a message to others who may contemplate conduct similar to the defendant's – a message that violations of campaign finance laws will not be tolerated, and conduct designed to thwart the purposes behind those laws, namely transparency and the goal of a level playing field, will be dealt with seriously. Simply put, the problem of unreported political contribution schemes is not going away. Without the genuine cooperation of someone involved in the scheme, such as Harris here, uncovering such conduct frequently proves exceedingly difficult, with many offenses going undetected and their perpetrators unpunished. Indeed, the defendant's serial participation in the scheme involving conduit contributions and shadow campaigns went undetected for many years.

Given the extraordinary cooperation in this matter, however, and the public exposure of defendant's serial offenses by virtue of her guilty plea, a sentence of incarceration is not required in this case to adequately reflect – on balance – the severity of the offenses combined with atonement for them in the form of substantially assisting the government's investigation and prosecution of a wide range of fraud and public corruption offenses. Further, the government anticipates that the defendant will elaborate upon Harris's extensive fall from grace in this matter – going from a close confidant of Thompson and the District's then-mayor in 2011 to a political pariah once facts of her involvement in the campaign finance offenses were publicized.

### D. The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Found Guilty of Similar Conduct.

The Government's recommended sentence falls within the Guidelines range, accounting for a downward departure, and takes into account the sentences of related defendants.

In connection with this investigation, defendant Thomas Gore (D.D.C. Case No. 1:12-cr-129 (CKK)), was sentenced to six months of incarceration. Another defendant, Vernon Hawkins (D.D.C. Case No. 13-cr-227 (CKK)), was also sentenced to six months of incarceration. Gore's obstruction – destroying records and lying to the FBI – was similar to Hawkins's actions, except that Hawkins compounded his obstruction by continuing his false statements and denials after his cooperation plea. However, neither defendant provided anything approaching the amount of substantial assistance provided by Harris. Although Harris's involvement in campaign finance offenses greatly exceeded the crimes committed by Gore and Hawkins, the value of Harris's cooperation greatly exceeded the cooperation provided by Gore and the non-cooperation provided by Hawkins. Nonetheless, the government has considered both such defendants in fashioning its recommendation in this case; it is appropriate for the Court to do so as well.

The government further notes that two shadow campaign candidates (Mark Long and Kelvin Robinson) funded by Thompson and orchestrated by Harris received sentences of probation. A third, Jeff Smith, received a sentence of 60 days of incarceration – but notably did not cooperate or provide any assistance in the investigation. Similarly, Troy White, a consultant who pled to offenses related to his involvement in a federal shadow campaign, also received probation after pleading guilty and cooperating with the investigation.

Finally, although Thompson was sentenced to a period of three months of incarceration, there is good reason to sentence Harris to a period of probation. That is: Harris pleaded guilty in 2012, over 18 months before Thompson, and substantially assisted the investigation not merely with respect to Thompson, but also Hawkins and several others identified above. Therefore, a

16

sentence of probation is well in keeping with the sentences in related cases and in recognizing her early acceptance of responsibility and unique role in bringing the related defendants to justice.

### E. The Pertinent Policy Statements Issued by the United States Sentencing Commission.

The advisory United States Sentencing Guidelines ("Guidelines" or "USSG") recognize a downward departure for substantial assistance in the investigation and prosecution of others. *See* U.S.S.G. § 5K1.1. The recommended sentence takes into account the substantial assistance provided by Harris in the investigation and prosecution of others. Her guilty plea and cooperation pulled back the curtain on years of widespread corruption. Similarly to Thompson, Harris's cooperation brought certainty – where before there had been dispute and denial – that the widespread corruption had been going on for years, affecting many of the District's contested elections, including the 2006 and 2010 primary elections for its highest elected office. Her cooperation confirmed that she and Thompson had corrupted numerous federal elections, including the primary election for our country's highest elected office in 2008.

Her substantial assistance included assistance in the investigation and prosecution of numerous matters as described in detail above. Specifically, she provided substantial assistance in the following charged matters:[11]

- *United States v. Mark Long*, 2014-CF2-15615 (D.C. Superior Court): As a result of the defendant's (and Thompson's) cooperation, Long pleaded guilty in D.C. Superior Court to conspiring to violate the D.C. campaign finance laws in connection with the 2010 mayoral primary election. Long was sentenced to probation.

---

[11] The Government has filed concurrently an Addendum discussing areas of the defendant's substantial assistance that did not result in public charges. Because of the compelling privacy, reputational, and due process interests implicated by those areas of uncharged conduct, the Government has filed a motion to seal the Addendum.

17

- *United States v. Kelvin Robinson*, Case No. 2014-CF2-8873 (D.C. Superior Court): As a result of the defendant's (and Thompson's) cooperation, Robinson pleaded guilty to accepting illegal campaign contributions from Thompson during his unsuccessful 2010 campaign.  Robinson was sentenced to probation and 100 hours of community service.

- *United States v. Jeff Smith*, Case No. 2014-CF2-10925 (D.C. Superior Court):  As a result of the defendant's (and Thompson's) cooperation, Smith pleaded guilty to accepting illegal campaign contributions from Thompson during his unsuccessful 2010 campaign.  Smith was sentenced to 60 days of incarceration.

- *United States v. Michael A. Brown*, 13-cr-164 (BAH):  As a result of the defendant's (and Thompson's) cooperation, former D.C. Councilmember Brown admitted accepting illegal campaign contributions from Thompson during Brown's successful 2008 election for At-Large Member of the D.C. Council, his unsuccessful campaign for the 2007 special election for Ward 4 Member of the D.C. Council, and his unsuccessful campaign during the 2006 mayoral election.  Such conduct was included in the Government's sentencing recommendation for Brown as part of his unrelated bribery conviction.  Brown was sentenced to 39 months of incarceration.

- *United States v. Vernon Hawkins*, 13-cr-227 (CKK):  As a result of the defendant's cooperation, Hawkins pleaded guilty to making false statements and admitted his own illegal involvement in the 2010 mayoral primary election.  Hawkins was sentenced to six months of incarceration, with the government noting that Hawkins should get no credit for cooperation (and that Hawkins had continued to obstruct the investigation following his guilty plea).

Harris also provided substantial assistance in the investigation of Mayoral Candidate A. Ultimately, however, the United States Attorney's Office decided after the defendant pleaded guilty that it would not proceed with prosecution of that matter because of arguably impeaching evidence related to another witness, Thompson.  Nevertheless, by putting a spotlight on the widespread history of campaign finance corruption in the District, and holding the wrongdoers accountable, Harris's guilty plea and cooperation provide an opportunity for the District to usher in a new era of honesty, integrity, and transparency in D.C. politics.

While no criminal disposition can entirely remove the temptation for those who seek to undermine the election process with excessive and unreported contributions, the defendant's

18

downfall will remind those tempted to do so of the serious risks and severe consequences that await those who try and get caught. Similarly, while certain candidates will continue to be tempted to undermine the election process, the guilty pleas, public shame, and punishments of those candidates corrupted by the defendant will remind those tempted to do so in the future of the serious risks and severe consequences that await those candidates who try and get caught. In this case, the proposed sentence is appropriately limited because of the extraordinary cooperation and admissions by Harris, revealing the culture of corruption which she advanced, and because her cooperation and admissions permitted others who participated in it – particularly Hawkins and Thompson – to be held accountable.

## **CONCLUSION**

For the reasons described above, the government respectfully urges that the Court sentence the defendant as recommended above.

                                            Respectfully submitted,

                                            CHANNING D. PHILLIPS
                                            United States Attorney
                                            D.C. Bar No. 415-793

                                            _____/s/_____
                                            Michael K. Atkinson
                                            Assistant United States Attorney
                                            Jonathan P. Hooks
                                            Special Assistant United States Attorney
                                            555 4th Street, NW
                                            Washington, DC 20530
                                            (202) 252-7917 (Atkinson)
                                            Michael.Atkinson2@usdoj.gov

DATED:   August 26, 2016